CASTELLI v. BURNS et al.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

1. SPECIFIC PERFORMANCE (§ 19*)—AGREEMENTS TO PURCHASE LAND AND EXECUTE MORTGAGE.

Plaintiff, holding a mortgage for $4,000 subsequent to one which was being foreclosed, made an agreement with defendant under which defendant was to purchase the land, execute a new mortgage in lieu of that being foreclosed, and two new mortgages to plaintiff, one for the amount of his original mortgage, and one for $2,500 advanced by him to aid in the purchase. Defendant purchased the property, conveyed to a third person, who was conceded to be a dummy, and who executed a mortgage for the amount of the foreclosed mortgage to defendant, which he transferred to S., but failed to execute the two mortgages to plaintiff. *Held*, that plaintiff was entitled to specific performance of defendant's agreement to execute such mortgages, or, if defendant was unable to specifically perform, to recover $6,500, with interest, but was not entitled to any relief whatever as against S.; the mortgage to him having been given pursuant to the agreement, and he being a purchaser in good faith.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 47; Dec. Dig. § 19.*]

2. CONTRACTS (§ 157*)—CONSTRUCTION—MANIFEST ERRORS.

Where it was manifest that references, in a contract to the party of the second part, were intended to refer to the party of the first part, it would be read according to the manifest intention of the parties.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 739; Dec. Dig. § 157.*]

3. CONTRACTS (§ 210*)—AGREEMENTS TO MORTGAGE—PERFORMANCE.

Where an agreement to execute mortgages on land did not specify how long the mortgages were to run, the mortgagee was entitled to mortgages payable immediately.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 936, 937; Dec. Dig. § 210.*]

4. SPECIFIC PERFORMANCE (§ 129*)—ACCOUNTING FOR INTEREST OR PROFITS.

A person agreeing to purchase land at a foreclosure sale for the benefit of a subsequent mortgagee, and to execute new mortgages to such mortgagee, would be required, in a decree for specific performance, to account for interest or mesne profits from the date of his purchase; and, there being no proof as to the profits, interest would be allowed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 420–423; Dec. Dig. § 129.*]

5. SPECIFIC PERFORMANCE (§ 134*)—PERSONS ENTITLED.

Plaintiff, holding a mortgage for $4,000 subsequent to one which was being foreclosed, made an agreement with defendant, under which de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

140 N.Y.S.—67

fendant was to purchase the land, execute a new mortgage in lieu of that being foreclosed, and two new mortgages to plaintiff, one for the amount of his original mortgage, and one for $2,500 advanced by him to aid in the purchase.' Defendant purchased the property, conveyed to a third person, who was conceded to be a dummy, and who executed a mortgage for the amount of the foreclosed mortgage to defendant, which he transferred to S., but failed to execute the two mortgages to plaintiff. *Held*, that in a suit for specific performance plaintiff was entitled to costs as against defendant, whose failure to comply with the contract made such suit necessary, but that plaintiff was liable to costs as against S.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 441; Dec. Dig. § 134.*]

Appeal from Special Term, New York County.

Action by Domenico Castelli against Alexander S. Burns, Bernardo Semenza, and others for specific performance. From a judgment for plaintiff, the defendants named appeal. Modified in part, and reversed in part.

See, also, 152 App. Div. 947, 137 N. Y. Supp. 1114.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Geo. E. Blackwell, of New York City, for appellant Burns.

Barnett & Jablow, of New York City (Ralph Barnett and Morris Jablow, of counsel, both of New York City), for appellant Semenza.

Louis O. Van Doren, of New York City, for respondent.

SCOTT, J. To thoroughly comprehend the merits of this appeal it is necessary to recite the essential facts, which, although somewhat complicated, are not in dispute.

[1, 2] In the year 1909 the real property known as No. 128 West Houston street, in the city of New York, was owned by Christina and Carmina Minetti. At that time Domenico Castelli, the plaintiff held a mortgage upon the property for $4,000, which was subordinate to four prior mortgages as follows: One held by the Standard Trust Company, for $57,000; one held by Arnstein and Levy, for $11,000; one held by Anna Neill, for $4,000; and one held by Luigi Minetti, for $2,000. The mortgages held by Neill and Luigi Minetti cut no figure in this controversy. The present owners of them were made parties to the action and appeared by attorneys, but made no claim for relief, and are not represented on this appeal.

In 1909 Arnstein and Levy, the holders of the second mortgage for $11,000, began an action of foreclosure. Plaintiff, on being served with the papers in that action, took them to his attorney, Antonio C. Astarito, who, in turn, called upon one Timonier, an attorney who had represented the owners of the property when plaintiff's mortgage was made. Astarito, acting for plaintiff, had a meeting with Timonier and the appellant Burns, at which it was agreed that plaintiff should contribute $2,500 towards a fund for the purchase of the property at the foreclosure sale, and that Burns should make the purchase for the benefit of the mortgagees holding mortgages subsequent to the one being foreclosed. This agreement was carried out. The foreclosure

sale was held on May 3, 1910, and Burns purchased the property for $15,000, of which $2,500 was contributed by plaintiff, and on May 25, 1910, the referee executed a deed of the property to Burns. On the same day Burns and plaintiff entered into a written agreement, of which a copy is attached to the complaint. This agreement was carelessly worded, but its meaning is sufficiently plain. It is made between plaintiff, designated as party of the first part, and Burns, designated as party of the second part. The confusion arises from the fact that in two places the words "party of the second part" are used, when, as is perfectly apparent from the surrounding circumstances and the acts of the parties, "party of the first part" was meant. In one instance it recites that the "party of the second part" has agreed to contribute and has contributed $2,500 towards purchasing the property, whereas it was plaintiff, party of the first part, who made the contribution. In another instance it is provided that the party of the second part shall receive from the party of the first part a mortgage for the sum advanced. Again it is perfectly apparent that the parties should be transposed. It was the party of the first part (plaintiff) who contributed the $2,500, and it was the party of the second part (Burns) who bought the property in, so that it is entirely apparent that the intention was that the party of the second part (Burns), who bought the property, should give a mortgage to the party of the first part (plaintiff), who had advanced the money. As was said by the Vice Chancellor in Huyler's Executors v. Atwood, 26 N. J. Eq. 504, of a deed in which the same transposition of parties occurred:

"The mistake is evident. The party of the second part was to pay purchase money. It is to be read according to the manifest intention of the parties, as there can be no doubt what that is."

So read, the meaning of the agreement under consideration is quite clear. After reciting the contribution by plaintiff of $2,500 towards the purchase of the property, and Burns' purchase thereof "at the instance of and for the sole benefit of all the said subsequent mortgages," it was agreed that plaintiff should receive from Burns, "or his immediate grantee," a mortgage to secure the amount of $2,500 advanced by plaintiff, with interest at 6 per centum, "which mortgage shall be subsequent and subordinate only to the second mortgage to be given by the owner to secure the difference in the money required in acquiring said premises under said sale and expense in connection therewith, and that the expense of placing the said second mortgage shall be borne out of the property." It was further provided that Burns should execute a bond and mortgage for the sum of $4,000 and interest to cover the original advance by plaintiff upon the property, which mortgage was to be a fourth mortgage upon the property, subject to the Minetti and Neill mortgages, and also subject to the first and second mortgages, "the latter to cover the money advanced by party of the second part [Burns] on taking title and expenses in connection therewith and all expenses for recording and taxes on said mortgage and denying same."

· Upon the execution of this agreement, Burns executed a deed of the property to one Agnes T. Madden, concededly a dummy, and she ; at once executed and delivered to Burns a bond and mortgage for $11,000, which he, on December 27, 1910, sold to the defendant Se-menza for the sum of $10,000 in cash, which Burns received and kept, or gave to Timonier, under whose direction he appears to have been acting, and who is now dead. In August, 1911, Madden, at Burns' direction and for a nominal consideration, executed a deed of the property to one Victoria Michelin, who executed a lease to one Paterno.

Up to a certain point in these proceedings Burns acted in strict conformity to his agreement with plaintiff. That agreement contemplated that he should convey the property to a third person, and · through that third person execute a mortgage, which was to be a second mortgage, replacing the mortgage formerly held by Arnstein and Levy. Having done that, however, it was his duty to have executed and delivered to plaintiff a mortgage for $2,500 and a bond and mortgage for $4,000. The conveyance to Mrs. Michelin was in violation of that duty, but fortunately no irreparable harm was done thereby, because at the trial Mrs. Michelin tendered to said Burns a deed of the premises and an assignment of the lease to Paterno, which, as appears by a document appended to the case on appeal, said defendant · has accepted. Upon these facts it is not difficult to formulate a judgment which will do equity between the parties, and which will not be so elaborate and drastic as the one under review.

[3, 4] Burns is now in a position to specifically perform his contract with plaintiff, and should be required to execute and deliver to plaintiff: (1) A mortgage for $2,500, bearing interest at 6 per cent. (2) A bond and mortgage for $4,000, also bearing interest at 6 per cent. No time is specified in the agreement as to how long these mortgages are to run, and they should therefore be presently payable. (3) He should pay interest on $6,500 from May 25, 1910, the date on which he received the referee's deed, to the date of the mortgages to be given by him. He held the property from the receipt of the referee's deed as trustee for the plaintiff so far as plaintiff's advances went, and should account for and pay either interest or mesne profits from that time. Although the property is apparently of a rentable character, there is no evidence as to the mesne profits, and interest should therefore be allowed. These two mortgages should be subordinate only to the $11,000 mortgage held by Semenza; the mortgages to Neill and Minetti being for some reason out of the case. If said Burns shall still be unable to make specific performance as above provided, or shall refuse to do so within 20 days, he should pay to plaintiff the sum of $6,500, with interest at 6 per cent. from May 25, 1910.

So far as concerns the appellant Semenza, we see no reason why the mortgage held by him should be annulled and a new one executed, as required by the order appealed from, or why he should be further restrained from proceeding with its foreclosure. The making of such a mortgage was expressly provided for in the agreement between

plaintiff and Burns, and Semenza appears to have purchased it in entire good faith. In so far as Semenza is concerned, the judgment should be reversed, and the complaint dismissed.

[5] So far as concerns costs, the necessity for this action arose from the failure of Burns to live up to his contract, and the plaintiff is entitled to costs against him at the Special Term and on appeal. Semenza, on the other hand, having apparently been blameless, is entitled to costs against plaintiff at Special Term and on appeal.

Settle order on notice. All concur.·